IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HARRISON SCOTT,

      Petitioner,

  vs.

J. WALKER, WARDEN,

      Respondent.

No. CIV-S-10-1107 KJM GGH P

FINDINGS & RECOMMENDATIONS

I. Introduction

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 conviction, while already incarcerated, for assault and carrying a sharp instrument as a prison inmate. It was found that petitioner had two prior serious convictions and he was sentenced to twenty-five years to life as a three strikes offender. This action is proceeding on the original petition filed May 5, 2010, raising one claim that the trial court used two strikes from a prior single criminal act which was improper and in violation of double jeopardy.

    After carefully considering the record, the court recommends that the petition be denied.

\\\\\

1

II.  <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error.  <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law.  <u>Id</u>. at 1519.  "Contrary to" clearly established law applies to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue.  <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court

authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.
>
> ***
>
> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter,__U.S.__, __S.Ct.__, 2011 WL 148587 (2011)

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in

dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III. Background

The California Court of Appeal set forth the following factual summary and background in a published opinion that the court adopts below.

> In 1998, [petitioner] was convicted of robbery (Pen.Code, § 211) FN1 and carjacking (§ 215, subd. (a)) arising out of the same facts. Both of those convictions are alleged as prior strikes in the instant case, and [petitioner] contends one of them must be stricken.
>
> FN1. Undesignated statutory references are to the Penal Code.
>
> In People v. Burgos (2004) 117 Cal.App.4th 1209, 12 Cal.Rptr.3d 566 (Burgos), Division Two of the Court of Appeal, Second Appellate District, discussed this issue. We find the holding in Burgos difficult to discern. It can reasonably be read to state that in such cases one strike must be stricken, or that the connection between the two strikes is but one factor a trial court must consider in conducting a traditional Romero analysis (People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628).
>
> By applying the definition of a "strike" as provided by the three strikes law, and by closely hewing to People v. Benson (1998) 18 Cal.4th 24, 74 Cal.Rptr.2d 294, 954 P.2d 557 (Benson), we conclude that in such cases, the trial court is not compelled to strike a strike, but must consider the closeness of the two strikes as an additional circumstance in conducting a Romero analysis. Because the trial court in this case did so, we shall affirm the judgment.
>
> FACTUAL AND PROCEDURAL BACKGROUND
> On November 8, 2005, several inmates at New Folsom Prison, including [petitioner], attacked another inmate, and a sharp object was found in [petitioner's] pocket. [Petitioner] was charged with assault with a deadly weapon on an inmate by a non-life prisoner (§ 4501) and possession of a sharp instrument by a prison inmate (§ 4502, subd. (a)).
>
> [Petitioner] made a pretrial Romero motion, arguing that his 1998 robbery and carjacking strikes arose out of his single act of robbing the victim of his car, and it was unfair to treat that one act as two strikes. The People's opposition argued the trial court could strike a strike if, and only if, [petitioner] fell outside the spirit of the three strikes law. The People's opposition also recited [petitioner's] criminal history, including a juvenile record of robbery and assault with a deadly weapon,

4

and an adult record including a prior in-prison stabbing (§ 4501), and many sustained discipline cases in prison, several involving violence.

The People's opposition to the [petitioner's] motion described the facts of the strikes as follows: "On July 03, 1997, ... the victim ... was carjacked at gunpoint. He reported to Los Angeles Police officers that he had been confronted by two males in a dark green Volkswagen Bug. [Petitioner] ... approached him and pointed a rifle at him. [The victim] exited the vehicle and allowed [petitioner] to take the vehicle. Inside the vehicle were numerous items belonging to the victim, including clothing."

At the pretrial Romero hearing, [petitioner's] counsel agreed that the People's opposition to the Romero motion "[e]ssentially" accurately stated [petitioner's] criminal history.

The trial court concluded that Burgos did not compel it to strike a strike, found [petitioner] fell within the spirit of the three strikes law, and denied his Romero motion.

At trial, the jury rejected [petitioner's] claim of self-defense. However, the jury acquitted [petitioner] of assault by a non-life prisoner with a sharp instrument. The jury convicted [petitioner] of possession by a prisoner of a sharp instrument and simple assault. (§§ 240, 4502, subd. (a).) The jury found the robbery and carjacking strikes true, although one of the strike verdict forms is missing from the clerk's transcript. (§§ 211, 215, 667, subds. (b)-(i), 1170.12.) To the extent [petitioner] purports to challenge whether both strikes were proven, he forfeited the claim by failing to separately head it. (People v. Crosswhite (2002) 101 Cal.App.4th 494, 502, fn. 5, 124 Cal.Rptr.2d 301.) In any event, the jury was polled and it is clear it found both strikes true.

The probation report in this case describes the strikes as follows: "[O]n 7/3/97, at approximately 2220 hours, the victim parked his vehicle and got out. Another vehicle stopped nearby and [petitioner] got out. [Petitioner] approached the victim, pointed an assault rifle at him and demanded his car keys. The victim, fearing for his safety, gave [petitioner] his keys, and [petitioner] drove away in the victim's vehicle. The other vehicle also left the scene."

The abstract pertaining to the prior strikes shows the trial court imposed on [petitioner] the upper term of nine years for carjacking (§ 215, subd. (a)), plus 10 years for a firearm enhancement (§ 12022.5, subd. (a)), and imposed but stayed (§ 654) an upper term sentence for robbery and an additional firearm enhancement.

[Petitioner's] counsel renewed the Romero motion before sentencing, and objected to the description of the strikes in the probation report. The prosecutor argued those facts could show [petitioner] committed two acts, one act of robbing the victim of his keys, and the other of robbing the victim of his vehicle.

The trial court overruled the objection to the probation report, but found it did not have adequate information to determine that two acts occurred, and declined to revisit the Romero ruling it had made. On appeal, the People mention the prosecutor's two-act theory, but do not defend it, and brief this appeal as if one act

5

|   |   |
|---|---|
| 1 | took place. For purposes of this appeal, we agree. (See People v. Dominguez (1995) 38 Cal.App.4th 410, 419-420, 45 Cal.Rptr.2d 153 (Dominguez) [carjacking and robbery " 'the same act' " where Dominguez demanded " 'everything [the victim] had' " and victim gave him jewelry and allowed him to take victim's van].) FN2 |
| 4 | FN2. As we have explained before, the party seeking relief generally bears the burden to show entitlement to relief. (People v. Lopez (1997) 52 Cal.App.4th 233, 251, 60 Cal.Rptr.2d 511.) In making his Romero motion, [petitioner] undertook the burden to show that a strike should be stricken. Thus, to the extent [petitioner] wanted to show that his two strikes arose from the same act, he had the burden to provide evidence of that fact. Thus, gaps or ambiguities about the facts of his two strikes would normally cut against [petitioner]. But the facts as stated in the People's opposition to the Romero motion and in the probation report did not present a significant factual dispute. As stated, consistent with the view of the parties on appeal, we proceed on the understanding that both strikes arose from one act: On July 3, 1997, [petitioner] used a gun to rob and carjack one victim at one time. |
| 10 | The trial court sentenced [petitioner] as a three strikes offender to a state prison term of 25 years to life with the possibility of parole for possession of a sharp instrument by a prison inmate. [Petitioner] timely appealed. FN3 |
| 12 | FN3. Codefendant Victor Dwayne Cornelius also timely appealed, but he later abandoned his appeal. |

People v. Scott, 179 Cal.App.4th 920, 923-25 (2009)

IV.  Argument & Analysis

      Claim 1 - Three Strikes & Double Jeopardy

      Petitioner argues that the trial court used two strikes from a prior single criminal act in sentencing which was improper and in violation of double jeopardy.

      Discussion

      This claim was brought on direct appeal and denied in a thorough and reasoned published opinion by the court of appeal.

      " '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' [Citation.] To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme."' [Citation.]

"Consistent with the language of and the legislative intent behind the three strikes law, we have established stringent standards that sentencing courts must follow in order to find such an exception. '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.] [¶] ... [¶]

"... For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[ ] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case."

II. Analysis

The trial court concluded it retained discretion to strike or not strike one of [petitioner's] strikes, and declined to strike one because after reviewing his violent criminal record, the trial court concluded [petitioner] fell within the spirit of the three strikes law. [Petitioner] does not challenge that conclusion, but argues the trial court had to strike one strike. We disagree.

A. The Three Strikes Law

As section 1170.12, subdivision (b)(1) states, the three strikes law defines a "strike," in part, as follows:

"Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state. The determination of whether a prior conviction is a prior felony conviction for purposes of this section shall be made upon the date of that prior conviction and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor. None of the following dispositions shall affect the determination that a prior conviction is a prior felony for purposes of this section:

"(A) The suspension of imposition of judgment or sentence.

"(B) The stay of execution of sentence.

"(C) The commitment ... as a mentally disordered sex offender following a conviction of a felony.

"(D) The commitment to the California Rehabilitation Center...."

Thus, the three strikes law itself defines those prior convictions that are considered strikes. Whether a conviction is a strike "is not affected by the

7

sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor." (§ 1170.12, subd. (b)(1).)

Both robbery (§ 211) and carjacking (§ 215, subd. (a)) are enumerated strikes. (§§ 667.5, subd. (c)(9) & (17), 1192.7, subd. (c)(19) & (27).) Thus, absent any limitation external to the three strikes law, both of [petitioner's] priors would be treated as strikes, because neither was converted to a misdemeanor automatically upon sentencing. (§ 1170.12, subd. (b)(1).)

In Benson, supra, 18 Cal.4th 24, 74 Cal.Rptr.2d 294, 954 P.2d 557, our state Supreme Court held that a strike is a strike even if the sentence therefor was stayed under section 654: "In the present case, defendant received the benefit of section 654 when he was sentenced for the felonies he committed in 1979; it was only when defendant reoffended after the enactment of the Three Strikes law that he faced the prolonged incarceration of which he now complains. The Three Strikes law provided him with notice that he would be treated as a recidivist if he reoffended. [Citation.] He chose to ignore that notice and commit a subsequent felony." (Benson, at p. 35, 74 Cal.Rptr.2d 294, 954 P.2d 557.)

However, Benson also stated that "a trial court retains discretion in such cases to strike one or more prior felony convictions under section 1385 if the trial court properly concludes that the interests of justice support such action" (Benson, supra, 18 Cal.4th at p. 36, 74 Cal.Rptr.2d 294, 954 P.2d 557), and made this observation in a footnote: "Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which two prior felony convictions are so closely connected-for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct-that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (Ibid., fn. 8.)

In People v. Sanchez (2001) 24 Cal.4th 983, 103 Cal.Rptr.2d 698, 16 P.3d 118 (Sanchez), overruled on another point in People v. Reed (2006) 38 Cal.4th 1224, 1228-1229, 45 Cal.Rptr.3d 353, 137 P.3d 184 (Reed), the California Supreme Court addressed a claim that it would be unfair to treat current second degree murder and gross vehicular manslaughter convictions arising out of the same act as two strikes in a future prosecution.

As the court stated in Sanchez: "We are not faced with that question in the present case, but we believe it is appropriate and prudent to note that in this court's decision in Benson, we observed that a trial court may strike a prior felony conviction under section 1385, and that we left open the possibility that 'there are some circumstances in which two prior felony convictions are so closely connected ... that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors.' " (Sanchez, supra, 24 Cal.4th at p. 993, 103 Cal.Rptr.2d 698, 16 P.3d 118; see also People v. Ortega (2000) 84 Cal.App.4th 659, 668-669, 101 Cal.Rptr.2d 253.)

B. The Offense of Carjacking
We turn now to the crime of carjacking. Section 215 defines "carjacking" as the

8

taking by force or fear of a motor vehicle, with the intent to permanently or temporarily deprive the victim of the vehicle. (Stats.1993, ch. 611, § 6, p. 3508, eff. Oct. 1, 1993.)  This was part of a bill that contained an urgency clause as follows: "In order to protect the people of this state from the extreme danger posed by an increasing number of carjackings and to provide a level of punishment sufficient to deter the commission of these violent crimes, it is necessary that this act take effect immediately." (Stats.1993, ch. 611, § 65, p. 3619.)

Carjacking is often a robbery in which a vehicle is taken. (§ 215, subd. (a).)  Its sentencing triad is higher than for robbery. (Compare § 215, subd. (b) with § 213, subd. (a)(1)(B).)  But a carjacking conviction can be based on the intent to permanently or temporarily deprive the victim of a car, whereas a robbery requires the intent to permanently deprive a person of property. (Dominguez, supra, 38 Cal.App.4th at pp. 417-419, 45 Cal.Rptr.2d 153; see People v. Ortega (1998) 19 Cal.4th 686, 700, 80 Cal.Rptr.2d 489, 968 P.2d 48, overruled on another point in Reed, supra, 38 Cal.4th at pp. 1228-1229, 45 Cal.Rptr.3d 353, 137 P.3d 184.) Because a person can commit a carjacking by forcibly taking a vehicle with the intent to joyride, robbery is not a lesser included offense of carjacking. (In re Travis W. (2003) 107 Cal.App.4th 368, 373, 132 Cal.Rptr.2d 135 (Travis W.) ["Nevertheless, there is an undeniable measure of overlap between robbery and carjacking"]; People v. Green (1996) 50 Cal.App.4th 1076, 1083-1084, 58 Cal.Rptr.2d 259; Dominguez, supra, 38 Cal.App.4th at p. 418, 45 Cal.Rptr.2d 153.)

The difference in the required intent was no accident. One reason for creating the new offense of carjacking was that many " ' "gang carjackings are thrill[-]seeking thefts" ' " and it was difficult to prove intent to permanently deprive the victim of the car.  (Travis W., supra, 107 Cal.App.4th at pp. 374-375, 377, 132 Cal.Rptr.2d 135.)

Section 215 contains the following unique provision: "This section shall not be construed to supersede or affect Section 211.  A person may be charged with a violation of this section and Section 211.  However, no defendant may be punished under this section and Section 211 for the same act which constitutes a violation of both this section and Section 211." (§ 215, subd. (c).)

C. Burgos and Nguyen
The unique provision of section 215, subdivision (c) and footnote 8 of Benson converged in Burgos.  Burgos had previously been convicted of attempted robbery and attempted carjacking, those convictions were alleged as strikes, and he argued that the two strikes should be treated as one because they arose from the "same act." (Burgos, supra, 117 Cal.App.4th at pp. 1211-1212 & fn. 3, 12 Cal.Rptr.3d 566; see Benson, supra, 18 Cal.4th at p. 36, fn. 8, 74 Cal.Rptr.2d 294, 954 P.2d 557.)

Burgos seems to hold that because Burgos's convictions stemmed from the same act, one strike had to be stricken: "In this appeal, [Burgos] contends that the trial court abused its discretion in refusing to strike one of his two prior strike convictions, because the two prior strike convictions arose from the same act. We agree." (Burgos, supra, 117 Cal.App.4th at 1211, 12 Cal.Rptr.3d 566.)

9

1
2
"We now hold that the failure to strike one of the two priors convictions that arose from a single act constitutes an abuse of discretion." (Burgos, supra, 117 Cal.App.4th at p. 1214, 12 Cal.Rptr.3d 566.)

3
4
5
"Here, appellant's two prior convictions, attempted carjacking and attempted robbery, were, in the language of Benson, 'so closely connected,' having arisen from the same single act, that failure to strike one of them must be deemed an abuse of discretion." (Burgos, supra, 117 Cal.App.4th at p. 1216, 12 Cal.Rptr.3d 566.)

6
7
8
After discussing the unique sentencing limitation provided by section 215, subdivision (c), quoted above, Burgos stated: "While this provision does not refer to the use of the convictions as priors in a later prosecution such as the one before us, it reinforces our belief that infliction of punishment in this case based on both convictions constitutes an abuse of discretion." (Burgos, supra, 117 Cal.App.4th at p. 1216, 12 Cal.Rptr.3d 566.)

9
10
11
12
13
14
The penultimate paragraph of Burgos begins, "Appellant's strike priors arose from a single criminal act. His criminal history aside from the strike convictions consisted of ...," and then Burgos makes what appears to be an ordinary Romero analysis, discussing Burgos's mild criminal history. (Burgos, supra, 117 Cal.App.4th at pp. 1216-1217, 12 Cal.Rptr.3d 566.) But then, the last sentence of that paragraph states: "We conclude that, in view of the particular offenses that constituted the two prior strike convictions in this case, it was an abuse of discretion to fail to strike one of those convictions in furtherance of justice under [Romero] and section 1385." (Ibid.)

15
16
17
18
In other words, Burgos seems to hold that the "same act" circumstance is dispositive, then seems to treat it as one factor in a Romero analysis, and then says the nature of "the particular offenses that constituted the two prior strike convictions in this case" is what compels striking one strike, again strongly indicating a rule that the "same act" circumstances mandate striking a strike in such cases. (Burgos, supra, 117 Cal.App.4th at pp. 1216-1217, 12 Cal.Rptr.3d 566.)

19
20
21
22
23
24
This leaves the actual holding of Burgos doubtful, and has led to a divergence of views. Several treatises indicate that Burgos states a dispositive rule. (See Couzens & Bigelow, Cal. Three Strikes Sentencing (Barrister Press 2d ed.2008) pp. 3.9-3.11; 3 Witkin & Epstein, Cal.Criminal Law (3d ed.2009 supp.) Punishment, § 357, p. 257; Cal.Criminal Law: Procedure and Practice (Cont.Ed.Bar 2009) § 37.33A, p. 1133; Menaster & Ricciardulli, 3 Strikes Manual (Courtroom Compendiums, July 2009 supp.) pp. 12-13.) On the other hand, as mentioned by the prosecutor in this case, we are aware that some unpublished-and therefore uncitable (Cal. Rules of Court, rule 8.1115(a))-cases take the view that Burgos merely identified an additional factor a trial court must weigh in a Romero analysis.

25
26
The trial court noted the confusion within the Burgos opinion, properly declined to rely on any unpublished cases, and adopted the view that Burgos provided an additional factor to consider; namely, the closeness of the prior strikes inter se, in conducting a Romero analysis. The trial court then discussed [petitioner's]

10

1
2
    violent criminal record, concluded that he fell within the spirit of the three strikes law, and declined to strike either of his prior strikes.

3
    The trial court got it right: Whichever rule <u>Burgos</u> meant to announce, we conclude the "same act" circumstances posed by robbery and carjacking cases provide a factor for a trial court to consider, but do not mandate striking a strike.

4
5
6
    Some of the confusion in <u>Burgos</u> may stem from its failure to discuss the definition of a strike: As stated, whether something is a strike "is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor." (§ 1170.12, subd. (b)(1).) This negates a broad reading of <u>Burgos</u>.

7
8
9
10
11
12
13
14
    Further, although it was not viewed as dispositive, <u>Burgos</u> used the sentencing limitation provided by section 215, subdivision (c) to "reinforce[ ]" its conclusion. (<u>Burgos</u>, supra, 117 Cal.App.4th at p. 1216, 12 Cal.Rptr.3d 566.) But <u>Benson</u> undermines this view, because [petitioner] was on notice that the three strikes law would treat both convictions as strikes, and therefore that he "would be treated as a recidivist if he reoffended." (<u>Benson</u>, supra, 18 Cal.4th at p. 35, 74 Cal.Rptr.2d 294, 954 P.2d 557.) In <u>People v. Nguyen</u> (2009) 46 Cal.4th 1007, 95 Cal.Rptr.3d 615, 209 P.3d 946, the California Supreme Court recently upheld the use of juvenile adjudications as strikes, partly because such an adjudication puts the person on notice that upon reoffense, she or he will be punished as a recidivist. (<u>Id</u>. at p. 1024, 95 Cal.Rptr.3d 615, 209 P.3d 946 ["Sentence enhancement based on recidivism flows from the premise that the defendant's current criminal conduct is more serious because he or she previously was found to have committed criminal conduct and did not thereafter reform"].)

15
16
17
18
19
20
21
D. Conclusion
    In short, [petitioner] received the benefit of the sentencing limitation of section 215 when he was sentenced in 1998. (See <u>Benson</u>, supra, 18 Cal.4th at p. 35, 74 Cal.Rptr.2d 294, 954 P.2d 557.) He is not being improperly "doubly punished" for robbery and carjacking, as he contends. He chose to reoffend, knowing that he had two prior strike convictions. He is not entitled to a vestigial benefit in this case from the section 215 sentencing limitation. All he was entitled to was consideration by the trial court of the closeness of the two strikes in determining whether, in the exercise of discretion, one should be stricken. The trial court considered that factor, but, in the exercise of its discretion, did not find that his violent record justified treating those two strikes-albeit arising from the same act-as one.

22
23
24
    As stated, [petitioner] does not challenge the trial court's exercise of discretion as such; that is, he does not contend that he falls outside the spirit of the three strikes law. (See <u>Carmony</u>, supra, 33 Cal.4th at pp. 375-378, 14 Cal.Rptr.3d 880, 92 P.3d 369.) Accordingly, we need not review that separate issue. (See <u>People v. Stanley</u> (1995) 10 Cal.4th 764, 793, 42 Cal.Rptr.2d 543, 897 P.2d 481 [point not developed is forfeited].)

25 <u>People v. Scott</u>, 179 Cal.App.4th 920, 926-32 (2009).

26     To the extent petitioner seeks relief regarding issues of state law, those issues are

11

not cognizable on federal habeas review.  Generally, a federal court may not review a State sentence that is within statutory limits.  Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987).  "Absent a showing of fundamental unfairness," even a State court's "misapplication of its own sentencing laws does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).  In evaluating a State conviction, a federal court must defer to the State court's interpretation of applicable State sentencing laws.  Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993).

In enacting the three strikes law, California made a reasoned decision that protecting public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime.  See Ewing v. California, 538 U.S. 11, 25-26, 123 S.Ct. 1179 (2003).  "Nothing in the Eighth Amendment prohibits California from making that choice."  Id. Instead, established precedent demonstrates that states have an interest in deterring and segregating repeat offenders.  See id. (internal citations omitted).

It is purely a matter of California law and within the discretion of the California state courts to determine which prior offenses constitute strikes and which prior strikes will be used to enhance a particular sentence under the three strikes law.  As demonstrated above, the state courts analyzed petitioner's sentencing claims in depth and held that his sentence was not in violation of state law.   Thus, this court will not disturb that holding.

In all of the appeals in the state system, petitioner never raised the claim that his sentence was in violation of federal double jeopardy.  That claim was raised for the first time in the instant federal petition.  While the claim has not been exhausted, the court can deny it on the merits as the claim is meritless.  See 28 U.S.C. § 2254(b)(2).

The United States Supreme Court has held double jeopardy implications inapplicable to sentencing proceedings because the determinations at issue do not place a defendant in jeopardy for an offense.  Monge v. California, 524 U.S. 721, 727-28, 118 S.Ct. 2246 (1998) (citing Nichols v. United States, 511 U.S. 738, 747, 114 S.Ct. 1921 (1994) (noting that

repeat-offender laws " 'penaliz[e] only the last offense committed by the defendant' ")). The United States Supreme Court has held that recidivist laws do not violate double jeopardy because "the enhanced punishment imposed for the [present] offense 'is not to be viewed as .... [an] additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" Witte v. United States, 515 U.S. 389, 400, 115 S.Ct. 2199 (1995) (quoting Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256 (1948)); see United States v. Kaluna, 192 F.3d 1188, 1198-99 (9th Cir. 1999)(en banc), quoting Witte.

Moreover, even assuming that the robbery and carjacking convictions could be viewed as violating double jeopardy (despite the Legislature's express approval of charging and obtaining convictions for both during the same act), petitioner misapprehends his ability to claim such here. The time to make the double jeopardy challenge was at the time he received the convictions for those offenses which he asserts constitute double jeopardy. He may not attempt to challenge the validity of a prior conviction(s) used for sentencing enhancement purposes in the present conviction at issue. Lackawanna County District Attorney v. Coss, 532 U.S. 394, 121 S.Ct. 1567 (2001). Having apparently defaulted in his double jeopardy contention in the previous case, petitioner may not attack it now.

Thus, petitioner's sentence is quite consistent with established Supreme Court authority. For all these reasons, petitioner's claims should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

If petitioner files objections, he shall also address if a certificate of appealability should issue and, if so, as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement. 28 U.S.C. § 2253(c)(3).

1  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: 02/02/2011

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

ggh:ab
scot1107.hc